for this one case, an important case. I appreciate you bringing your understandings of it to us. Have any of you argued in this case, in this court, before this panel before? I'm sorry I don't remember, but I'm sure you did a great job and will again. It is Dexter Johnson v. Bobby Lumpkin, 23-7002. Ms. Vindale, if I didn't say that right. May it please the court. In Johnson's view, Congress intends for nothing to stand in the way of a successive Atkins claim. Indeed, if a decades-old Atkins claim is now potentially meritorious, there are three ways Johnson thinks procedural barriers won't matter. First, that Atkins claim will never be successive because it will always be newly available every time the medical community expands its definition of intellectual disability. Second, the Atkins claim can never be untimely because any attorney's decision not to raise it sooner will always be extraordinary. And third, the Atkins claim can also never be untimely because every second gateway petitioner will be able to prove up his diligence. As explained in the briefs, Johnson's wrong on all fronts, but today I plan to focus primarily on the successiveness question in arguing why this court should reverse the lower court's decision. Turning now to that issue. The successiveness question before this court really has two components the court will need to address. The first is whether this court can diverge from its opinions in Henry Cathy and Henry Johnson, which I will shorthand as the precedential value question. The second is if it can diverge from those opinions, does it want to, which I'll shorthand as the statutory construction question. The answer to both questions should be yes. Beginning with the precedential value question, this court should hold that authorization decisions are not binding precedent outside of those proceedings for several. It's certainly true an authorization decision insofar as substantial showing has been made doesn't control what happens later, but it's a bit bold it seems to me for you to be arguing that the principles of law that are set out in the opinion are not binding on a later case. And I don't think you have any case law that would say that. You analogize it to COAs, maybe some other things. Help me with where in the world there's any authority to support what you're saying. So I have several answers to that, Your Honor. I think as far as the case law goes, yes, I did cite to the COA. I do think that is directly analogous. Regardless of whether a single judge granted a COA or whether a three-judge panel in a published opinion did so, this court is clear that later merits panels, which this panel is, is not bound by anything that a motions panel does. Well, a motions panel is the tentative decision made in an initial presentation or earlier presentation of the case turned over ultimately to a merits panel. Now, that's not what happened here. This was a decision based on what was brought before us then, set out principles of law, back it goes. I would respectfully disagree that that's not what happened here, Your Honor, and I think that's by design of the statute. This court has recognized time and time again that authorization decisions are tentative and are preliminary, just like a COA grant. That's also what the statute contemplates. Well, preliminary insofar as the ultimate result in the case. All we're saying is you pass this threshold or this hurdle, you've got another one ahead. But aren't principles of law set out in an opinion that moves the case along? How does a motion then later instill on the same appeal to be resolved by a merits panel, but by doing the entire task given to the Fifth Circuit and sending the case back? I still think that's analogous to a COA decision. Well, you need to, but I keep going. And I also think that other features of the statute make it even more reason why that shouldn't be the case. The statute, there's no question that the normal appellate process is not, none of those features that are distinct in those are applicable in an authorization decision, which again is a motion for authorization. It is a motions panel. In fact, this court just issued an authorization yesterday and called it an order and didn't even put it on the hand down list. So I do think there's indication that these authorization decisions are like a motion in any other circumstance. And there is analogies, to example, other non-final preliminary decisions like preliminary injunctions, like collateral orders on appeal and like ex parte orders. Is any Fifth Circuit opinion dealing with a decision such as was made either in Cathy or in this case in 2019? Is there any Fifth Circuit opinion that says that is not binding on a later merits panel? Not a later merits panel, a later panel that gets the case back after the remand? Not in this circuit, Your Honor. But the Eleventh Circuit has adopted that precise rule, that it is not binding on the later panel, on the merits, or on the district court, and that it must do everything de novo and afresh. That is the rule I think this court should adopt as well, given those particular features. Again, the statute is unique compared to every other appellate proceeding that exists. The court must enter these decisions within 30 days by the statutory deadline. There's a limited record, most often proffered solely by the petitioner seeking authorization. The Eleventh Circuit case, is that the St. Hubert decision? No, Your Honor. Are you familiar with the St. Hubert decision? I am, Your Honor. There, the court did say it was binding, and your argument did get one justice's view, correct? Yes and no. So the St. Hubert decision is a slightly different rule. And in fact, they specifically did not overrule the earlier decisions in remass. And I believe there are a couple other decisions on their own page. They're in my reply brief. And I can get the page, perhaps, for you on rebuttals, but... We designated our earlier opinion to be published. Does that have any significance? I think it can be published and binding on other decisions in the authorization posture. So just as... Only in the authorization posture. That would be proceedings under 2244B. Do we have to decide this question of whether these are precedential? Or could we just say it's law of the case for this case? This is Johnson. That was five years ago. We aren't disturbing what we said. We don't have to make a resolution of the precedential issue. I would disagree, Your Honor. I think they turn on all the same question. Whether it's law of the case or the mandate rule, the question is fundamentally the same. What binding, what value at all to either this petitioner or any other petitioner? Well, I guess what we would be saying is we're not bound. We just think what we said then was there's no judicially created feasibility thing. That's just our best interpretation of the phrase previously unavailable. It's a statutory construction issue. And we made that then. We're not disturbing what we did five years ago. Certainly, I still think that in that posture, the Court is deciding the precedential value of the case. So I don't know that... We're just saying it's the law of the case and we aren't convinced we should disturb what we did, citing... Yeah, go ahead. I'm sorry. And in every other situation in which these tentative preliminary decisions apply, the law of the case and the mandate rule also do not apply. So all the arguments that I'm making for why it shouldn't be precedential to other petitioners apply with equal force to why it shouldn't be law of the case in Johnson's case. Well, we're just saying we're consistent with ourselves. We're not purporting to bind anybody else. That seems to me a much more modest ruling. It would get us to the same merits question that you probably want to reach it anyway. If Your Honour's suggesting that because of law of the case, this Court can reverse essentially if you wanted to get to the merits of it. We could. I think I know law of the case doctrine pretty well. We could if we were shown convincing intervening authority, we could change our minds. But I don't see the convincing intervening authority and therefore proceed on that basis and just reiterate that what happened in Cathay and what we said in 2019 was an interpretation, a component of the statutory phrase. It wasn't some judicial ingredient we put in. Certainly, Your Honour. And that goes to the statutory construction question, which is a second question. But I do think as a threshold matter, the Court can and should address what deference it owes at all to that initial determination under any of these doctrines. I'm sorry. I thought you had finished. If you had further to say in response, go ahead. Did you have something further? I kind of cut you off. No. I was just going to reiterate what I said a second ago, that for all the reasons that we don't think it should have binding precedential value outside of it, that applies to equal force with law of the case should not apply. Counsel, it seems to me — You will concede that if we don't adopt a new rule, then you don't win on this issue. Is that right? You said we need to adopt a rule, the Eleventh Circuit rule. Is that what you said? I think I suggested that the Eleventh Circuit has the rule that I'm suggesting. Yes, so I would — Well, you did say — Yes. Maybe I misheard it, but I thought you said we should adopt that rule. Yes, Your Honour. I think that would be a correct — My question is, unless we adopt a new rule, then you don't prevail on this question. Isn't that right? On the prima facie question, correct, Your Honour. All right. Well, counsel, isn't the Johnson opinion between 19 and a different posture? Even if we were to treat that in the way that we would treat a motions panel, where a case comes up here, has some preliminary motions, stay, whatever it is, some analysis is made, stay of the injunction, stay of something else, stay of removing the barrels from the case. But if the case is over and that is not further developed, that motions panel, if published, is precedent of this Court. So regardless of Johnson, we have Cathy, or probably my learned colleague is correct, Cathay, or whatever you said, Judge Dickinson. Isn't that case in a different circumstance? It is over, it is precedent on this case, and there's no later development in that case to change that precedential ruling. And I think that's the fundamental problem with authorization decisions, Your Honour. The idea that our normal precedential system, our normal common law depends on the availability and the ability of the parties to review. When they think there is a wrong determination, we can never do that. So there is not... The habeas would either get granted or not. You'd be reviewing it then. Not if the Court is going to suggest that the District Court is 100% bound by every decision made in that tentative proceeding. They have a higher standard to resolve the habeas question. They do, and it has to be conclusive. But if we're still binding the District Court to those initial determinations, it does seem that in some ways the two gateways will collapse on themselves if the District Court cannot make that decision afresh. And if you're going to find that this has precedential binding value, then obviously the District Court has no freedom whatsoever unless there's a patently erroneous question to question any of the legal determinations or the factual determinations in these cases. And so that is, I think, what makes this process unique. That we are statute... Both parties are statutorily prohibited. We couldn't ask this exact panel in that posture to fix what we perceive to be errors, and there were errors in that order. This panel decided that the DSM-5 was published 17 days before final judgment, and that was incorrect. It was incorrect on the record before it. The District Court solved that on remand because he did not feel himself bound by factual determinations. Remind me in your brief, when you reached the actual innocence issue, and you cited in Ray Burden, were you saying that was binding on us, or are you agreeing that, too, wouldn't be binding then? The Henry Burton opinion in the 28J letter, I was suggesting they were persuasive authorities, not binding. Otherwise, the position would be inconsistent, correct? Correct. Okay, so once you move on this issue, move on to the merits more of what we're dealing with? Yes, Your Honor, and turning to that statutory interpretation question, I'd like to start there with a few things I think we can all agree on. Atkins is the rule that categorically exempts intellectually disabled petitioners from the death penalty. That was decided in 2002. That was four years before Johnson ever committed his crime, and nine years before he filed his initial report. Under the plain text of the statute, Atkins, as a generic matter, would fail every single prong. It's not new because newness is determined by the date the collateral review is final, when the conviction is final, and it's the question there is whether the rule they're seeking was dictated by precedent at the time of that finality or not. Atkins clearly was not only dictated by precedent when Johnson's conviction became final. It was precedent. So it cannot be a new rule of law. It also cannot be retroactive because it was decided before Johnson ever committed his crime. Retroactivity is a backwards-looking inquiry, as this Court has recognized in the persuasive, though not binding, opinions of Garcia White as well as And finally, it was clearly available to Johnson by the time he filed his petition in 2011. As the District Court recognized, a strict interpretation of the statute, and as you recognize, and that's at ROA 1052, means that Johnson and all other petitioners who did not raise an Atkins claim in their initial petition do lose unless and until the Supreme Court either chooses to make these cases retroactive, the newer, later cases, or if Congress were to change fundamentally the factual predicate prong to permit sentencing-based claims. That is admittedly a harsh result. And so the question that's now before the Court, and was before the Court in earlier postures, is whether advancements in the medicine or publication of medical diagnostic manuals like the DSM-5 is fundamentally a new rule or a new fact. And the answer is that it's a new fact. Johnson admitted as much to this Court and the District Court in his briefing when he sought authorization and chose to proceed under the timeliness prong of the factual predicate inquiry, but in light of Cathy, took advantage of a lower burden because he could not meet the factual predicate prong there and created a new rule, a new availability rule. But in the District Court, he continued to advance the theory that the DSM-5 established a new factual predicate date for timeliness purposes. And notably, in the hearing in which he was questioning his own counsel, Pat McCann, in March 2022, and this is at ROA 10, excuse me, 1240 to 1241, he asked McCann whether the changes in the DSM-5 were so significant that it would, quote, eventually lead these changes to be considered new facts for people's legal claims, end quote. In any other context, there's no question that a new medical diagnosis, if we were to consider a Strickland claim, and we discover that the understandings have changed such that they may or may not have been available at the time of trial, that would be a new fact. It would not reanimate a new Strickland rule or suggest that a Strickland claim was never available in the first place. That's further undermined or further shown by the fact that intellectual disability is itself a question of fact. So undoubtedly, the mechanisms and the framework for determining whether a person is or is not intellectually disabled are also facts. And in the case that Johnson cites in his briefs, it's Munoz out of the Ninth Circuit, they even described the Cathy rule as being a rule about a prisoner with, quote, a factual basis for a claim based on, and then there's ellipsing there, when the prisoner learned of that factual basis. That makes plain what has happened here. The two prongs of successiveness, new facts and new rules, have been conflated under the unavailability prong, and in doing so, this Court necessarily had to write words into the statute to make that happen. Obviously, the problem is that if he were to proceed under the factual predicate prong, he would run into the issue of the actual innocence, and that only permits actual innocence of the underlying offense, and sentencing-based claims, therefore, can never benefit. But that is not a problem that this Court can fix via judicial amendment. It is a problem that only the Congress can fix, only they can decide to expand the factual predicate prong into sentencing-based claims, or, as I said earlier, as it applies to sentencing-based new rules of constitutional law, the Supreme Court can choose to make those cases retroactive one day. But setting aside whether this should be a new fact, even assuming there is some credence to the argument that this has some, that it informs the rule inquiry at all, that the DSM-5 is somehow part of the framework, which the Director does not concede that is the case, but assuming it is, we only can discuss that. That is only even a question before the Court because of the new rules established in Hall in 2014, and more in 2017. The state of play before 2014 was Atkins. Atkins noted that these medical manuals existed. It noted that those manuals recognized three fundamental characteristics for diagnosing it, and that those were largely consistent with the states who had also adopted statutes about how to define when someone is intellectually disabled. And yet, per Hall in 2014, Atkins did not provide, quote, definitive, procedural, or substantive guides for determining when a person is intellectually disabled. Instead, it said that not everyone who is intellectually disabled will be so impaired to fall within its rule, and it explicitly left the determination, what it acknowledged was serious debate amongst the states about how intellectual disability is defined to the states. It gave no guidelines about who determines and how the courts must determine who is and isn't intellectually disabled. And this is why McCann at this point is still thinking Texas's standards control. Correct, Your Honor, because that was the state of the law until 2014 when Hall reversed Florida's interpretation of the prohibition on intellectual disability with the strict cutoff. That is the case. That is the rule that establishes that the courts must be informed by those medical determinations. But the suggestion that Hall or Moore are mere applications of Atkins is rejected by the Supreme Court in Chute v. Hill when they specifically rejected, albeit under 2254d, but the logic applies, the Sixth Circuit ruling that Moore was simply an application of Atkins. And when it did reject that, it said it couldn't see how the Sixth Circuit's rule could, quote, be teased out of Atkins' brief comments about the meaning of intellectual disability. This court affirmed that Hall also extended Supreme Court precedent when it based its decision on its independent judgment. And neither Hall nor Moore, while instructing the courts that they must be informed by the medical views, mandated the use of any particular guideline. And there are many. There's the DSM, obviously. There's the AAID manual. And it didn't ever say which one is the one the courts must be bound by. Instead, when it said informed by the views of experts, it also said that the views of experts don't, quote, dictate the court's determination and that being informed does not demand adherence to the latest medical guideline. In light of that, there clearly are questions about what effect the DSM-5 or any other medical way of analyzing this claim has on the ultimate legal determination. But the fact of the matter is that question only exists because of the new rules created by Hall and by Moore. Those are the claims. Those are the rules that Johnson's claim relies on. It's not on the DSM-5. It's not on the publication or the change in the merits. It's that the Supreme Court instructed the courts for the first time what the importance of the DSM-5 even is in this inquiry in 2014. The problem, though, for Johnson is still that those cases have obviously never been made retroactive by the Supreme Court. So under, again, a strict interpretation, even taking the DSM-5 as having some relevance to this inquiry, he fails to meet the prongs of 2244b2a if we're not reading other words into the statute. And we never even reach the previous unavailability prong if we are properly applying that in that context. So let me take you to equitable tolling and the district court's decision on that. The district judge found that McCann had not abandoned Johnson but then criticizes the way he handled the Moore issue, the Atkins issue, the whatever issue. What is the level, if any, of attorney negligence, I'll leave it at that, that is sufficient for equitable tolling, if at all? It must be extraordinary, Your Honor, and I think that's what... Does it have to be abandonment? And if so, what authority is there? Does it have to equate to abandonment or can it be somewhere between that and what the Supreme Court has otherwise dealt with in Holland? Effectively, yes, I do think so, Your Honor. I think the cases bear out that basically what has to happen to qualify as extraordinary circumstances has to approach effectively abandonment. There is a lot of run-of-the-mill negligence and bad decisions that are made that do not qualify under that inquiry, and that's what the court has affirmed time and time again. I think Maples v. Thomas, which came after Holland, obviously affirmed that basically the rule is abandonment. And that is when this court has applied it similarly, that's what happened. But the district court was clear here, and the facts do not bear out that McCann abandoned his... That's what the district court found, correct? Correct. Right. And so I think the delta between... I want to make sure, because you said that's what the district court found, correct? And then you said correct. So what are y'all agreeing the district court found? What's your understanding what the district court found? He found that McCann did not abandon him. All right, okay. Because it was a strategic choice? Did he make a finding that was tactical? He didn't acknowledge that it was strategic. He just decides that it was a reasonable strategy. So he understood time and time again, and every one of the findings was that McCann was a credible when he explained precisely why he chose to or not raise the claim when he did. But he also said that he suspected intellectual disability, and I think he made no investigation to it. So what's the case that allows you to not investigate something you suspect? How is that not extraordinary in effectiveness, coupled with the fact we know he did it for another defendant? Well, Your Honor, I think if we're going to be talking about a regular Strickland claim, then we would look towards Wiggins or the other investigation claims. And the reasonableness in the investigation is also a question, and I think it's important to note here... In mitigation evidence for sentencing, if you don't investigate at all, that is ineffectiveness. What I think is important to note here is McCann was not working on a blank slate. He did not have no information whatsoever about McCann, about, excuse me, Mr. Johnson's intellectual functioning or his background. He had, to the contrary, extremely high IQ scores that were testified to and assessed by a defense expert at trial, and who explicitly found, albeit under the prior version of the DSM-5, or the DSM, that he was not intellectually disabled. He had an uphill battle. This was not someone who just randomly and unknowingly proceeded without any information at all. There was a lot of information developed at the time of trial. The question... How do you look at the offense conduct when you apply the Texas standards? I'm sorry, Your Honor? Once he prevailed in Moore, there was no uphill battle for Johnson. Well, I would disagree with that. The CCA has twice denied the claim still on the merits post-Moore, when Briseno didn't exist. So I do think there's still an uphill battle. He still lost, even under the best version of the law that existed at the time. But the DSM-5 doesn't say that there's no importance for IQ scores at all, or it just can't be a strict cutoff. So he still has to deal with IQ scores who were done when he was 18. It's the one he obtained later, in 2019. He's obviously in his late 30s at that stage. Counsel, did he say, did McCann say something in his testimony about pursuing it in the Moore case had its own dangers? He discussed why he was reluctant to pursue it in the Johnson case, two-edged sword, perhaps, get a decision from the state court that then is subject to epideference in federal court. Did he say anything about why maybe Moore was the better case to present this, or why there was some reason to bring it in one and not the other? Yes, and it was under ex parte briseño, because those were in existence until 2017. So he felt that Moore's case did not meet those additional factors in briseño, whereas Johnson's did. Primarily, and the record shows, it was taking the factors that relied on information and leadership, basically, is the idea. Leadership, planning, and premeditation. And the evidence showed at trial, by Johnson's opponent defendants, that he was the instigator. He was the instigator of the murders, of these murders, as well as several others, and several robberies as well. He was the one driving, directing, leading them, making the decision to kidnap them, making the decision to rape Miss Aparece. And those were all things that were relevant under the briseño factors. Moore did not have those types of traits. So he viewed Moore, under briseño, which was the goal to get rid of it, that he would have better chances of doing that than he would in Johnson's case. I just want to make sure I understand, and I don't want to put words in your mouth, but is it your argument that the district court made an erroneous determination that McCann's representation was ineffective? Yes, Your Honor, and I'm out of time, but can I answer the court's question, of course? Yes. Yes, that is our argument, that it was erroneous, but for purposes of this interlocutory appeal, it's also essentially the conclusions. That he made an erroneous determination that McCann's representation was ineffective. Correct. He never used the word ineffective. Exactly. So I guess my question is, why then do you conclude that he found the representation ineffective? I understand you want to say that's an erroneous finding, but I'm not convinced that he ever found that the representation was ineffective. He concluded that there were circumstances, but ineffective assistance of counsel, I'm not sure what you based your determination on that he made that finding. I just don't see it in this 31 pages. May I continue answering the question? I just want to be very clear. Okay. Correct, Your Honor, he doesn't use the word ineffectiveness, but to get extraordinary circumstance, it has to be egregious or gross misconduct. And the way he's doing that is agreeing that there was a strategic decision that was made, but disagreeing... So you've got a case that says extraordinary circumstances equals egregious misconduct. Yes, I believe that's Holland, Your Honor, and Maples v. Thomas, which going to Judge Southwick's question earlier about... But it's egregious misconduct if you're looking at ineffective assistance, right? Potentially, but not necessarily, because not all ineffectiveness is egregious. I think extraordinary circumstance contemplate run-of-the-mill ineffectiveness, run-of-the-mill negligence, run-of-the-mill circumstances in which we would say an attorney has acted poorly and deficiently. And yet, those are not extraordinary. So I do not think that this always collapses. But to be able to say whether it does or not is a really deep dive factually. Why would we expand the certified question to try to decide that in the first instance? The Director's not asking this Court to make that factual determination, however. It is... Answer it to conclude there was or wasn't Holland ineffectiveness. And again, the Director's not asking the Court to make that conclusion. It's simply whether the District Courts... The Courts have recognized principles at play in the equitable tolling inquiry, as Justice Alito did in Holland, for example. And this would be another principle the Director believes this Court is appropriately suited to do now, which is that these run-of-the-mill strategic decisions made by attorneys do not amount to extraordinary circumstances, and they should not. There are fact questions left for the District Court at that juncture. So the Director's not asking the Court to make the ultimate determination, but to establish the guidelines or the rules. All right, Counsel. We'll hear from you again. Please. Not doing my duty. Didn't watch. Good afternoon, Your Honors, and may it please the Court. I think Your Honors just hit on, really, the reason why we're here, is that this is an interlocutory appeal in which the District Court certified one question. This Court granted leave for that, and that is whether this Court has created judicial or equitable exceptions to 2244b2a. And this Court did not do that. What this Court did in In re Cathy and in Ray Johnson is provide a statutory interpretation for the term previously unavailable in 2244b2a. And that statutory interpretation is that a claim has to have some possibility of merit in order for it to be considered pre-available. That determination is binding on further courts in this Court and also on the District Court. And I think it's important to keep in mind the difference. We have to decide that, though, when I'm pointing out that it's law of the case. We decided that five years ago. We're back there again. Right. Do we have to decide whether we're binding this Court or any other Court, other than just say we aren't adjusting what we've said the is in this case? No, I don't think you have to, Your Honor. I agree that it's law of the case. Well, why don't you respond to the argument, though? I mean, this is like a contingent steel, contingent motions panel and forever will be, that initial decision, regardless of any later action on it. And it doesn't bind anybody. I think the answer to that, Your Honor, is I don't think that the motions COA panel is the best analogy for that. I think that if we were talking about whether in the authorization context the prima facie determination is binding on a merits panel, it's not. We know it's not. It's not binding on the District Court either. I think a better analogy... Is it not binding on prima facie or just not binding on where you go after finding a prima facie case? Just because this Court finds that a prima facie case has been made, the District Court's not bound by that and later merits panels of this Court are not bound by that either. I think the better analogy would be this Court in a 12B6 context, let's say, interprets a statutory term and then the lower court is not therefore free to reinterpret that statutory term. Just because you state a claim at a preliminary stage doesn't mean that you merit merits relief in the end. I feel like we might be moving into law of the case, though, on what you just said about a statutory interpretation. And we're not dealing with this particular concept separately. I mean, Judge Ekinson raised that with opposing counsel of whether law of the case, how that fits into this. But it seems to me statutory interpretation by an initial panel, case goes back, that may well be law of the case. And I agree. I agree that that is law of the case in this case. And in terms of certified questions, that's it? That's it. But I'm happy to address some of the other points that Your Honor's made. Well, I do think we need to discuss the rest of what's heard. It does seem to me certified question, at least this case law that says a certified question, it does not limit this Court from reviewing the rest of the necessary aspects of the order that underlie the certified question. Absolutely, Your Honor. That's correct. And I just, to make one more point on kind of this, whether something is binding or not, again, I think it would create a chaotic situation if, let's say, this Court authorizes, interprets a statutory term, authorizes a case, the District Court then interprets the same term in a different manner, goes back up to this Court, and then they reinterpret the term in a different manner. That just kind of would create a chaotic situation. And I don't think that's the best use of judicial resources. But... I'm not sure it was cited much, but that 11th Circuit St. Hubert decision? Yes, I am familiar. What would you say that stands for? That decision, I think, Justice, I mean, if we're talking about Justice Sotomayor's statement respecting the denial of cert, that, Justice Sotomayor's concern in that case was about the specific procedures that the 11th Circuit uses in authorization decisions. Those procedures include a deadline to, after a motion for authorization is filed, that the Court has to decide within 30 days. Justice Sotomayor noted that there was a very brief, I think that most petitioners only have about 100 words to tell the Court why they think something should be authorized. And then usually the government doesn't weigh in, and then any decision that the Court issues is then binding. And it was the lack of process that Justice Sotomayor was concerned about. Not the fact that any decision is binding. It was the very specific procedures that the 11th Circuit uses. And she also pointed out that the 11th Circuit is very much an outlier circuit when it comes to those procedures. We also think that the rule of orderliness precludes, or that the rule of orderliness supports this Court's interpretations in Cathy and Johnson. Cathy determined that previously unavailable means some possibility of merit. Johnson recognized that that was precedential. And we think that the rule of orderliness precludes disturbing those decisions. Would that implicate non-retroactivity? I'm sorry, in what way? Her point about Hall and Moore postdating any other relevant time period here. I don't think that that would implicate retroactivity because, well, those cases decided that the inquiry was whether or not something was retroactive to Mr. Johnson or Mr. Cathy. I also wanted to make a few notes about equitable status. Cathy is stayed right now in the District Court. I think that Cathy, the reason it took a little bit longer to go through the District Court process in Federal Court is because the CCA took a little bit longer to resolve some questions in Mr. Cathy's case. But once this Court, I think, granted leave to appeal the certified order, the Federal Court in Mr. Cathy's case stayed his case. But Cathy is the only other case that is in the same bucket that we're in. It's the only one who's made this kind of decision regarding what availability means or what do you mean, what does the bucket look like, what labels on? Oh, just this, Cathy came out in 2017 and Johnson applied Cathy, but those are the only two cases that apply, that applied Cathy and Johnson. We're sort of leapfrogging it now, if it's being held in the bands. Because we're on interlocutory appeal, perhaps, yes. I also wanted to make a few notes on equitable tolling, even though, just because Your Honor had some questions about that, the District Court in this case did not determine that he was bound by this Court's prima facie determination on ID. And if you look at the record at page 1068, you can see that. The District Court said under the fact-specific circumstances of this case, given the complex nature of the precise intellectual disability claim that is at issue here, and in light of the deficiencies that Johnson showed in the exhibits to his petition, I think that diligence is merited. So it's just simply incorrect to say that- We didn't write it out. I'm sorry? We looked at this particular set of facts. That's what he said, and that's on 1068. So the other, even though this Court didn't, or the District Court didn't certify the Director's third question, that question was whether or not a prima facie case of ID always exempts you from diligence. That's just not what the District Court did here, nor did the District Court exempt all people who are intellectually disabled from showing diligence. What about Holland? Do you have to have abandonment, or what are your thoughts? There isn't much case law out there. There's not much case law, but Holland does not say you have to have abandonment, and if anything, Holland says we do not agree. We don't want mechanistic rules. We don't want bright-line rules. We have to have flexible. We're a court sitting in equity right now. We have to have a flexibility right now so that we can adapt to new case situations. That's what Holland said. Did Justice Alito actually say you need abandonment? It might have been a concurring opinion, Justice Alito said. Court-accepted opinion, concurring opinion. But that's not what the majority said. Playing off against something the majority said? I don't know the context for his... I don't recall, frankly, Your Honor. Although Maples did find abandonment warranted equitable tolling, Maples was an extremely restricted opinion, and I think the Supreme Court was trying to make very clear that that was on a very limited set of facts, but I don't think that Maples, and I'm not aware of any court that has said that abandonment is the only way that an applicant can show equitable tolling. We also think that this, you know, because this is an interlocutory appeal, that the case should be remanded to the district court because we've made an argument that McQuiggan versus Perkins, and the logic there should be extended to actual innocence of the death penalty. The directors claimed that the district court resolved that question against us, but that's not what happened. On page 1059 of the record, the district court specifically reserved the question, saying that he needed to hear an adversarial presentation of the intellectual disability evidence before he could make that determination. What determination? Whether or not McQuiggan versus Perkins extends to actual innocence of the death penalty. Tell me what that means, actual innocence of the death penalty. I understand how you could claim actual innocence of a crime or conviction, but actual... I mean, it sounds to me like either you're eligible for the death penalty or you aren't. Actual innocence of the death penalty? What does that mean? That you're intellectually disabled, such that the Eighth Amendment forbids your execution. I guess I've got a problem with how I define innocent. Right. It's... No, it's not just you. There are other people who refer to it as innocence of the death penalty. Yeah, I think that that's... I mean, it's borrowing language from Sawyer versus Whitley somewhat, but yes. Do you know who first came up with that? I mean, it's been bouncing around. It does seem to be the wrong phrase, but I don't know where it started. Admittedly, I don't know where that started either, Your Honor. Let's stop it. That subject, In re Burton, is a difficulty or not? In re Burton, I don't think in terms of equitable tolling are the Perkins question. The Perkins question, In re Burton, I mean, since this court... Well, since Perkins came out, I think at least in Tamayo versus Stevens, in In re Sparks in 2019, and in In re Burton, all three of those cases, well, Tamayo said, that's a question we're not deciding here. And then Sparks and Burton said, even if we are to assume that, he hasn't met his burden for other reasons. So that's an open question in the circuit right now. And so I think at the director's brief, at the reply brief at page 29 or 30, they say that Henderson versus Thaler in 2010 has definitively resolved this. But that case predates Perkins, so it can't definitively resolve whether Perkins itself extends the logic. And again, Tamayo, Sparks, and Burton, if that really were resolved by Henderson, those cases wouldn't have said what they say. I also wanted to point out that the director's claiming that EDPA deference applies to the equitable tolling determination, and that's not the case. I'm not aware of any case that says that a federal court should defer to a state court finding on a federal deadline, which is the deadline that we're talking about here. And the director cites DeKinsel versus Kane in support of that, but that case was authorized under B2B, which is a factual determination. And so whether or not on the plenary review, Kinsel could meet his burden depended on state court findings. But this is a B2A case, and Kinsel just doesn't apply. Just a couple other quick points on why this court did not make any judicially created exception. In asking the district court to certify the question, the director is kind of seizing on a couple words that the district court used in the certified order, and that's at 1052 and in the footnote there, where the district court said, I think, futility exception. But what the district court describes this court as having done can't transform this court's actions into creating an equitable exception to a jurisdictional statute. And if you look at Henry Bauer from 2015, this court squarely said, we lack any authority to create an equitable exception to 2244. So this court knows when it is asked to do so, knows that it cannot do so, and did not do so here. What Kathy did and what Johnson followed is not the smoothest fit to the principles that are applicable here, whether they bind us or not, being how we answered that, we don't have to worry about how smooth they are. But you can label them a lot of things, sort of like referring to instance of the death penalty. You can put a lot of labels on things, whether they make sense or not. And it does seem to me that the argument that unavailability includes a new order of understanding of what it means to be intellectually disabled and the new principles that would apply, whether that made under 2244, whatever the subparts are, made that argument not available until then. We've resolved it. It's whether we're continuing to be bound by that. We think you have in Kathy and Johnson. I also wanted to make clear that the director has pointed out that Kathy and Johnson have created two separate meanings of the term previously unavailable, and that's not what this court did. Rather, it created a framework for evaluating previous unavailability. So the courts look at whether it was technically available, i.e., whether the claim had some possibility of merit. And then the court looks at the feasibility of amending if there's an existing federal petition to include the claim. I don't think those are two different things. It's a framework for depending on what the timing of the facts presented are. I'm happy to answer any other questions, Your Honor, but if not, I will. We lack time. Coming back to us. Thank you, Your Honor. May it please the court. I'd like to address the last argument that opposing counsel just touched on, which is the question about judicial exceptions and whether there is one. For all the reasons that if you read the plain text of the statute, you would need an exception or an amendment that continues to apply, but I want to make a few extra points. It is true that the district court called this a judicial exception. They're not the only ones who have suggested that this court has rewritten the statute, though. The Eleventh Circuit has as well, and in repose. The district court was just acknowledging what had occurred, and I don't think just saying that it applied this court's case resolves the question about whether these cases did that exact thing. And the point that opposing counsel made about there not being different interpretations or this being a framework is inconsistent with the idea that the district court had to apply two different interpretations for Johnson to win. And there are, in fact, three here. There's a futility exception. There's the feasibility analysis, which is the pragmatic approach. I think I accidentally— Stop. What's going on? Okay. Well, you're probably getting extra time, but go ahead. There's the feasibility analysis, which is the pragmatic approach as consistent with other circuits, but that does not turn on merit in any other circuit. And then there was still a third one that the district court also acknowledged was an extra statutory interpretation, and that's the Inouye Woods functional unavailability language. Somehow, the words previously unavailable mean all three things, depending on the facts of the case, and in this case, the court had to apply two of them for Johnson to succeed. And on top of that, the evidentiary hearing that we had in March 2022 was about the third exception. It was entirely about McCann's performance and whether that rendered the claim functionally unavailable. The district court did not rely on that evidence for the successiveness inquiry at all because he was able to take advantage of the other two interpretations in finding that we get through 2013 under the futility exception, and then we get through the rest because he would not have allowed McCann to amend the petition with what he deemed to be an undebatably meritorious newly available claim. I think the inconsistency there also highlights how these rules don't operate in practice. On top of that, it's important to note that the district court, when applying this court's futility analysis, also applied it to the new rule prong and the new rule language. The district court noted that I had argued and the director had argued that the rule can't be new if it existed prior to conviction finality, and then he adopted the exact same merits-based rule that's applying under the previous unavailability prong to define whether the rule was new in the first place. I think the Eleventh Circuit put it poignantly when Congress did not say that a new claim is available for any other reason but for a new rule made retroactive by the Supreme Court. To arrive at the futility analysis, we have to ignore the other parts of the statute, and that is why what this court has done and what the district court correctly acknowledged is to rewrite the 2244b2a language to permit petitioners like Johnson and Cathy to proceed. And I think as the district court found in other circumstances, futility has never been a good reason under AEDPA. He faulted McCann precisely for that futility thinking, and yet we would excuse petitioners from having to raise what was being long available claims because at some point, and I think this is fundamentally the issue, the rule is unworkable. Who's deciding that the claim is now available or good when it wasn't before? Could we have in the district court, could the state have put on evidence to suggest that the claim has always been bad and that it never changed in its viability? Could the district court make that determination and work its way backwards to jurisdiction? That's clearly not what Congress intended in permitting only very limited exceptions to the successiveness inquiry. We cannot ask the district court to pin the success of the claim to successiveness. It must make a determination separate from the merits, and it's easy to do that if it follows the text of the statute. Johnson's claim relies not on the DSM-5, but on Hall and on Moore, and it was never made retroactive. So that's the end of the inquiry. Counsel, if we do not accept your argument that I guess you began with first time about our rulings in Cathy and Johnson insofar as what unavailability means, what do you think your strongest point is for us that would allow the state to succeed? Is it, well, what do you think it is? I think the strongest point is to simply make the analysis of what his claim really relies on under the text of the statute. It's the new rule, and the new rule is Hall and Moore, and they're not made retroactive, and that's how we get to the end of the inquiry. I think that's the strongest, clearest analogy the court has acknowledged in plenty other especially authorization decisions that Moore is not retroactive, Hall is not retroactive, as every circuit to have found that has also found. It's the straightest path forward, and it is the purest statutory interpretation that would be consistent with every other case that this court has decided. All right, Counsel. Thanks to you and to both of you. I don't know if we'll see you again, but this case has its complexities. We are adjourned. Thank you.  Thank you. Thank you. Thank you. Thank you. Thank you. Thank you.